## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

BRIAN W. HARVEY, SR.

     *Plaintiff*,

*v.*                          CASE NO. 13-cv-13412

COMMISSIONER OF           DISTRICT JUDGE AVERN COHN
SOCIAL SECURITY,          MAGISTRATE JUDGE CHARLES E. BINDER

     *Defendant*.

_____/

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    REPORT

_____

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability, disability insurance benefits (DIB) and supplemental security income (SSI). The matter is currently before this Court on cross-motions for summary judgment.[2] (Docs. 14, 16.)

Plaintiff filed an application for a period of disability, DIB and SSI with a protective filing date of January 12, 2011, alleging that he became unable to work on November 8, 2010. (Transcript, Doc. 12 at 199-208.)  The claim was denied at the initial administrative stage. (Tr. 146-153.)

On April 24, 2012, Plaintiff appeared before Administrative Law Judge ("ALJ") Patrick J. MacLean, who considered the application for benefits *de novo*. (Tr. at 50-120.) In a decision dated May 25, 2012, the ALJ found that Plaintiff was not under a disability within the meaning of the Social Security Act at any time from November 8, 2010, through the date of the ALJ's decision. (Tr. at 64.) Plaintiff requested Appeals Council review of this decision. (Tr. at 49.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on June 4, 2013, when the Appeals Council denied Plaintiff's request for review. (Tr. at 45-48.)  On August 8, 2013,

---

[2]The Court has reviewed the pleadings and dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

2

Plaintiff filed the instant suit *pro se* seeking judicial review of the Commissioner's unfavorable decision. (Doc. 1.)

**B.  Standard of Review**

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is "more than a scintilla . . . but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)(quoting *Cutlip v. Sec'y Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and

even if substantial evidence also supports another conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)(citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)(en banc)(citations omitted)).

"Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006)("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party")(citations omitted); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

## C.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the DIB program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the SSI program of Title XVI, 42 U.S.C. §§ 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.

F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who have a

'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment which can be expected
> to result in death or which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through

the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity,
> benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination
> of impairments that "significantly limits . . . physical or mental ability to do
> basic work activities," benefits are denied without further analysis.

> Step Three:  If the claimant is not performing substantial gainful activity, has
> a severe impairment that is expected to last for at least twelve months, and the
> severe impairment meets or equals one of the impairments listed in the
> regulations, the claimant is conclusively presumed to be disabled regardless
> of age, education or work experience.

> Step Four:  If the claimant is able to perform his or her past relevant work,
> benefits are denied without further analysis.

> Step Five:  Even if the claimant is unable to perform his or her past relevant
> work, if other work exists in the national economy that plaintiff can perform,
> in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review terminates."

*Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.    ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through December 31, 2014, and had not engaged in substantial gainful activity since November 8, 2010. (Tr. at 55.) At step two, the ALJ found that Plaintiff's major depressive disorder, anxiety disorder and degenerative changes and small annular tear at L5-S1 "severe" within the meaning of the second sequential step. (Tr. 55-56.)  At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 56-57.) The ALJ found that the Plaintiff had the residual functional capacity (RFC) to perform

> sedentary work as defined in 20 C.F.R. §404.1567(a) and §416.967(a) except the
> claimant could occasionally climb ladders, ropes, scaffolds, ramps or stairs; balance;
> stoop; crouch; kneel; and crawl.  The claimant's work is limited to simple, routine and

repetitive tasks. The claimant could have only occasional interaction with the public and co-workers.

(Tr. at 57.)

At step four, the ALJ found that Plaintiff could not perform any past relevant work as a machine operator, machine maintenance mechanic or production machine tender . (Tr. at 62-63, 104-105.)  The ALJ also found that as of the alleged disability onset date, Plaintiff was 30 years old, which put him in the "younger individual age 18-44" category. *See* 20 C.F.R. §§ 404.1563 and 416.963. At step five, the ALJ found, in the alternative, considering Plaintiff's age, education, work experience and residual functional capacity, there were other jobs existing in significant numbers in the national economy that Plaintiff could also perform. (Tr. at 63-64.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 64.)

### E.    Administrative Record

The administrative record reveals that Plaintiff began psychiatric treatment in November 2010. (Tr. at 298-324.)   After reporting suicidal thoughts and receiving Paxil at Detroit Receiving Hospital, Plaintiff admitted himself to an alcohol dependency rehabilitation program at The Salvation Army Harbor Light System. (*Id.*)  Plaintiff removed himself from the program against medical advice before completing rehabilitation.  (Tr. at 298.)

In December 2010, Plaintiff was admitted to Henry Ford Hospital after an overdose of Flexeril and alcohol.  (Tr. at 420-425.)  Plaintiff was diagnosed with major depressive disorder, recurrent, severe without psychosis and polysubstance abuse, and was discharged with supplies of Celexa and Ambien and an outpatient appointment at Southwest Counseling Solutions.  (*Id.*)

7

Plaintiff underwent a psychiatric evaluation at Southwest Counseling Solutions on December 28, 2010, by V. Lingham, M.D. (Tr. at 430-433.) Plaintiff denied suicidal thoughts but complained of depression and poor sleep. (*Id.*) Dr. Lingham noted Plaintiff had alcohol on his breath, but was cooperative, had no delusional thought process, was fully oriented, had intact memory and fair insight and judgment. (*Id.*) Dr. Lingham diagnosed Plaintiff with depressive disorder, alcohol dependence and cocaine abuse and prescribed Revia, Celexa and Seroquel. (*Id.*)

On a January 2011 Psychiatric and Medication Review, Dr. Lingham noted Plaintiff was improving, with no suicidal ideation. He was described as alert, with coherent speech, and a sad, but stable mood. (Tr. at 429.) Dr. Lingham likewise noted an improving clinical status and no suicidal ideation on a June 2011 Psychiatric and Medication Review. (Tr. at 493.)

At a September 2011 medication review, Plaintiff reported he was in the hospital for five days after trying to cut his wrists and that he felt helpless and hopeless. (Tr. at 729.) After adjusting his medication, Plaintiff is noted as having a stable mood and no suicidal thoughts at his next medication review in October 2011. (Tr. at 727.) In December 2011, after the addition of Depakote to his medications, Dr. Lingham again notes improvement in Plaintiff's clinical status, with no suicidal thoughts. (Tr. at 725.)

On January 10, 2012, Dr. Lingham notes Plaintiff's request for a letter supporting his Social Security disability claim. (Tr. at 724.) Dr. Lingham issued a letter that same day indicating that Plaintiff was improving slowly, but was "not capable of obtaining or maintaining gainful employment." (Tr. at 515.) Dr. Lingham's medication reviews for February, March and

8

April 2012 all report Plaintiff's mood as stable, with no suicidal thoughts. (Tr. at 717, 718, 723.)

Plaintiff was diagnosed with a pulmonary embolism in February 2011 and was placed on Coumadin. (Tr. at 631-32.)  Pulmonary function testing was normal and Plaintiff was discharged on Coumadin. (Tr. at 543.)  Plaintiff had difficulty maintaining the Coumadin at therapeutic levels and received emergency treatment in April 2011 at Detroit Receiving Hospital for high INR levels and in September 2011 for a gastrointestinal bleed and supra-therapeutic INR levels.  (Tr. at 434-452, 682-692.)

Plaintiff's hematologist, Carter Bishop, M.D. monitored Plaintiff's INR levels and, in November 2011, discontinued Plaintiff's anticoagulant medication.   (Tr. at 703-704.) Subsequent hypercoagulable studies were normal and Dr. Bishop reported that Plaintiff continued to do well without anticoagulants, noting no significant symptoms of shortness of breath or hemoptysis. (Tr. at 710-711.) Plaintiff was discharged from the hematology clinic after Dr. Bishop determined that Plaintiff's pulmonary embolism was provoked by a deep venous anastomosis precipitated by a direct trauma.  (*Id.*)

At follow up visits with the HealthSource Clinic, Venkata Penumetcha, M.D. noted that Plaintiff's back pain was relieved with medication and that a neurosurgeon found no need for surgical intervention and that Plaintiff's asthma and hypertension were controlled well with medication. (Tr. at 705-713.)

On August 24, 2011, Ashraf Mostafa, M.D. completed a Michigan Medical Examination Report indicating that Plaintiff was clinically stable, could occasionally lift and carry less than 10 pounds and could stand or walk less than 2 hours in an 8 hour workday.  (Tr. at 511.)  Dr.

Mostafa also checked off that Plaintiff was limited in sustaining concentration and in social interaction, however, he did not provide any support or explanation for the physical or mental limitations despite the prompt for this information on the report document. (*Id.*)

At the administrative hearing, the ALJ asked the Vocational Expert ("VE") to consider an individual with Plaintiff's background who

> is able to lift up to 50 pounds occasionally, lift or carry 25 pounds frequently, and medium work as defined by the regulations; occasionally climb ladders, ropes or scaffolds, occasionally climb ramps or stairs, balance, stoop, crouch, kneel, and crawl; whose work would be limited to simple, routine, and repetitive tasks; and only occasional interaction with the public and with co-workers.

(Tr. at 108.)  The VE testified that such a person could perform Plaintiff's past relevant work as a machine operator.

The ALJ then asked the VE to consider the same hypothetical individual who is able to "lift up to 20 pounds occasionally, lift and carry up to 10 pounds frequently, and light work as defined by the regulations, incorporating all of the non-exertional limitations from the first hypothetical." (Tr. at 109.)  The VE testified that such a person could not perform any of Plaintiff's past relevant work, but could work as an assembler (9,000 jobs regionally), an inspector (4,500 jobs regionally) and a sorter. (*Id.*)

The ALJ then asked the VE to consider the same hypothetical individual who is able to "lift up to 10 pounds occasionally and do sedentary work as defined by the regulations and let's incorporate all those other non-exertional limitations from the last hypothetical." (Tr. at 110.) The VE testified that such a person could perform work as an assembler (2,400 jobs regionally

at the sedentary level), inspector (700 jobs regionally at the sedentary level), finisher or table worker. (*Id.*)

**F.      Analysis**

Plaintiff asks the Court to reconsider his claim for disability given the new evidence that he has supplied, attached to his Motion for Summary Judgment (Doc. 14.). I construe this argument as one for remand pursuant to "sentence six," 42 U.S.C. §405(g).

**1.      Remand for Consideration of New Evidence**

A remand under "sentence six," 42 U.S.C. §405(g) for consideration of additional evidence is warranted only if the evidence is "new," and "material" and "good cause" is shown for the failure to present the evidence to the ALJ. *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010).

> For the purposes of a 42 U.S.C. §405(g) remand, evidence is new only if it was not in existence or available to the claimant at the time of the administrative proceeding. Such evidence is material only if there is a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence. A claimant shows "good cause" by demonstrating a reasonable justification for the failure to acquire and present the evidence for the inclusion in the hearing before the ALJ.

*Id* (citing *Foster v. Halter.*, 279 F.3d 348, 357 (6th Cir. 2001)). Evidence reflecting an applicant's aggravated or deteriorated condition is not material because it is intrinsically irrelevant to whether he was disabled on or before the alleged date of disability. *Sizemore v. Sec'y of Health and Human Servs.*, 865 F.2d 709, 712 (6th Cir. 1988). If a Plaintiff believes he can establish disability after the date of the decision, his remedy is to apply for benefits for the

11

later period. *Id*.

The new records submitted by Plaintiff all relate to treatment he received after the May 25, 2012 administrative decision. Accordingly, they meet the "new" requirement. *See Sizemore*, 628 F.3d at 276. Nevertheless, a review of these records reveals that they relate to a recurrence of a pulmonary embolism and deep vein thrombosis, conditions that Plaintiff first suffered from in 2011, but that had resolved prior to the hearing before the ALJ. (Tr. at 60-61, 710-711.) Because the newly submitted records relate to changes in Plaintiff's condition after the administrative decision, they cannot be material to the Commissioner's determination and thus do not warrant remand. *See Sizemore*, 865 F.2d at 712.

Plaintiff also argues that the ALJ inappropriately disregarded the opinion of Plaintiff's treating psychiatrist because he was overly sympathetic to Plaintiff. I construe this argument as one that substantial evidence does not support the ALJ's decision of non-disability. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

### 2.    Substantial Evidence

Plaintiff argues that the ALJ improperly rejected the opinion of his treating psychiatrist, Dr. Lingham, based on the ALJ's assessment that Dr. Lingham was overly sympathetic to Plaintiff. (Doc. 19, Tr. 893.) Notably, "a treating physician's assessment may be unreliable

because of the bias he or she may bring to the disability evaluation," i.e., he or she "'may want to do a favor for a friend and client, and so the treating physician may too quickly find disability.'" *Masters v. Astrue*, 818 F.Supp.2d 1054, 1073 (N.D. Ill. 2011)(quoting *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001)). Given that Plaintiff directly solicited Dr. Lingham for an opinion of disability on the very day that Dr. Lingham generated his letter (Tr. at 515, 724.), I suggest that the ALJ properly considered that the conclusion of disability in Dr. Lingham's letter may have been "accommodative" rather than objective.

Notwithstanding the ALJ's comment that Dr. Lingham's opinion arose from his sympathy for Plaintiff, the ALJ rejected Dr. Lingham's opinion because it was inconsistent with the clinical observations documented in his own treatment records and because it was conclusory on the issue of disability, an issue ultimately reserved to the Commissioner. (Tr. at 60.)

The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. § 404.1527(c)(3). Furthermore, because the Commissioner is responsible for determining whether a claimant meets the statutory definition of disability, the ALJ "will not give any

special significance to the source of an opinion[, including treating sources], on issues reserved to the Commissioner described in paragraphs (d)(1) and (d)(2) of this section[,]" i.e., whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, residual functional capacity, and application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

Dr. Lingham's terse January 2012 letter noting that Plaintiff was not capable of obtaining or maintaining gainful employment includes no evidence or explanation to support that conclusion. (Tr. at 515.)  Moreover, the conclusion set forth in Dr. Lingham's letter is inconsistent with his documented clinical observations and treatment notes, wherein he regularly remarks upon Plaintiff's stable mood, absence of suicidal ideation, and overall improving condition (Tr. at 429, 493, 717, 718, 723, 725, 727.)  Finally, Dr. Lingham's unsupported conclusion is entitled to no special significance because it speaks to the ultimate issue of disability, which is reserved to the Commissioner. 20 C.F.R. §404.1527(d)(3). Accordingly, the ALJ appropriately disregarded Dr. Lingham's conclusion, relying instead on his treatment records  and other medical evidence in developing Plaintiff's RFC.

### G.   Conclusion

For all these reasons, after review of the record, I suggest that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III.   **REVIEW**

14

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97.  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

s/ Charles E. Binder

CHARLES E. BINDER
United States Magistrate Judge

Dated: October 7, 2014

15